UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

MIGUEL ANGEL MENDOZA LUGARDO,

                Plaintiff,                **FINDINGS OF FACT AND**
                                                     **CONCLUSIONS OF LAW**
                v.                           11-CV-1222 (MKB)

PRIMA PASTA & CAFÉ, INC.,

                Defendant.

----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

      Plaintiff Miguel Angel Mendoza Lugardo filed the above-captioned action against Defendant Prima Pasta & Café for unpaid wages pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). A bench trial was held on February 25, 2013. The Court now makes the following findings of fact and conclusions of law. Only those facts the Court deems necessary for the resolution of the claims will be discussed. For the reasons set forth below, the Court finds that Plaintiff failed to establish that he performed any work for which he was not properly compensated, and, therefore, the Complaint is dismissed in its entirety.

    **I. Findings of Fact**

        **a. Plaintiff's Testimony**

      Plaintiff testified that he began working for Defendant, an Italian restaurant, on June 20, 2006. (Tr. 12:17–24.) He learned of the job through his cousin, Alejandro Martinez. (Tr. 11:17–20.) Plaintiff testified that Defendant's manager at the time, Marcello Alberghina, hired him as a dishwasher. (Tr. 11:23–12:1.) Defendant's owner, Antoinette Modica, testified that the

restaurant did not have a manager named Marcello during the time that Plaintiff claims to have worked for Defendant. (Tr. 108:19–24.) Plaintiff testified that he was hired as a dishwasher and expected to work from 10:00 a.m. to 11:00 p.m. on Wednesday, Thursday, Friday, Saturday and Sunday each week. (Tr. 12:5–14.) Plaintiff testified that he was paid $275 a week in cash. (Tr. 12:15–16.) Plaintiff testified that in October or November of 2006, he received a raise and was paid $450 a week. (Tr. 21:8–14.) On cross examination, defense counsel asked Plaintiff why he had alleged in the Complaint that he had been paid $450 when he began working for Defendant, but now claimed he had only been paid $275. (Tr. 53:16–19.) Plaintiff contradicted his earlier testimony and stated that Defendant was supposed to pay him $450 from the beginning but only paid him $275 for the first four or five months. (Tr. 53:16–54:24.) Plaintiff then testified that he did not remember that he had been paid $275, when he first started, until he found a September 18, 2006 letter ("September 2006 letter") indicating that he was paid $275 a week. (Tr. 17:20–18:6; Pl. Ex. 1.)

Plaintiff testified that he had requested the September 2006 letter from Alberghina, so that he could provide proof of employment to the hospital treating his wife. (Tr. 17:17–18:9.) The letter, notarized on September 18, 2006, purports to be from Alberghina and states that Plaintiff has worked as a dishwasher for Defendant for two years and receives $275 a week. (Pl. Ex. 1.) Plaintiff testified that as of September 18, 2006, he had only been working for Defendant for four months. (Tr. 12:17–24.) Thus, the basis of Plaintiff's testimony that he was paid $275 a week is a letter that admittedly misrepresents how long Plaintiff had been working for Defendant. The letter is handwritten, but has a stamp at the top, which says "Prima, Pasta & Café" and provides Defendant's address. (Pl. Ex. 1.) Defendant had a stamp like the one used on the September 2006 letter, which it kept next to the cash register. (Tr. 86:1–10.) The stamp

2

was generally accessible to anyone in the restaurant. (Tr. 86:11–16, 116:3–13.) The letter was notarized, but Plaintiff admitted that his wife took the letter to be notarized after it had been signed. (Tr. 58:15–24.)

Plaintiff testified that in August of 2007 he was promoted to pizza preparer. (Tr. 20:23–21:4.) His salary increased to $500 per week. (Tr. 21:15–21.) As a pizza preparer, Plaintiff claimed that he worked from 11:00 a.m. to 11:00 p.m. on Monday, Tuesday, Wednesday, Thursday and Saturday each week. (Tr. 21:25–22:9.) Plaintiff testified that he did not actually leave work until 11:30 at night during the week and midnight on Saturday. (Tr. 27:18–24.) Plaintiff testified that, while a pizza preparer, he asked his new manager, Pablo Llerena, to write a letter for him to provide to the hospital. (Tr. 28:5–12.) Plaintiff originally testified that he asked for the letter in 2007, but, when confronted with the letter, he stated that he had requested the letter in 2009. (Tr. 28:9–10, 31:8–24.) The letter, dated December 29, 2009, is typed on stationary, which has "Prima Pasta & Café" letterhead and is stamped twice with Defendant's stamp. (Pl. Ex. 2.) In 2009, Defendant did not have any letterhead similar to the letterhead of the 2009 letter. (Tr. 87:3–5, 116:16–17.) The letter, signed by Javier Llerena,[1] states that Plaintiff earns $200 a week and has been working for Defendant since 2007. (Pl. Ex. 2.) Llerena testified that he did not prepare or sign the letter. (Tr. 127:23–128:3.) Moreover, according to Plaintiff, he was earning $500 a week at this time and had been working for Defendant since June of 2006. (Tr. 12:17–19, 21:15–19.)

Plaintiff testified that he complained to Llerena that he was not being properly compensated and Llerena became very upset, (Tr. 38:11–39:3), and on November 2, 2010, about five months after Plaintiff complained, Llerena fired him. (Tr. 39:14–22, 67:15–16.) Llerena

---

[1] Javier is Pablo Llerena's nickname. (Tr. 125:5–10.)

testified that Plaintiff never complained to him about his pay and that he never fired Plaintiff. (Tr. 129:1–5.) During Plaintiff's cross-examination, Defendant admitted a third letter dated January 2, 2011.[2] (Pl. Ex. 3.) The date on the letter is in Spanish, "Enero–02–2011," and the letter states, "This is to certify that Miguel Angel Mendoza Lugardo earns $280 a week. Mr. Mendoza has [. . . .]" *Id.* The letter is incomplete and is not signed. Plaintiff testified that Llerena gave him the letter in August of 2010 and simply put the wrong date on the letter. (Tr. 67:19–68:12.) Plaintiff did not offer any explanation for why the letter indicated that he was being paid $280 a week, even though Plaintiff claims he was being paid $500 a week at that time. Plaintiff did not provide any explanation for why, if the letter was provided by Llerena, it would be incomplete and would not be signed. Llerena testified that he did not prepare this document. (Tr. 128:17–20.)

### b. Plaintiff's Credibility

The Court finds that Plaintiff's testimony regarding his employment as a dishwasher and a pizza preparer is not credible. Plaintiff's testimony was inconsistent regarding his initial wages, and he admitted that his claim that he was paid $275 a week was based on the September 2006 letter, which falsely states that Plaintiff had been working for Defendant for two years. (Tr. 21:8–14, 53:16–54:13; Pl. Ex. 1.) Plaintiff's testimony was also inconsistent regarding various

---

[2] The three letters were not disclosed to Defendant until approximately a week and a half before trial. Plaintiff testified that he had discovered the letters in February or March of 2012 and given them to his lawyer in June or July of 2012. (Tr. 54:14–55:5.) On redirect, Plaintiff's counsel asked, "are you sure that you brought them to your lawyer in June or July 2012, or could it have been after that date closer to January of 2013?" (Tr. 73:22–25.) In response to this leading question, Plaintiff responded, "January of 2013 more, yes." (Tr. 74:1.) Plaintiff could not explain why he waited almost a year to give these letters to his lawyer. (Tr. 76:7–16.) This discrepancy in Plaintiff's testimony, as well as his alleged failure to provide his lawyer with documents he had in his possession for almost a year, undermines the credibility of Plaintiff's testimony.

dates, specifically the year that he requested the second letter and the year that he provided the three letters to counsel. (Tr. 28:9–10, 31:8–24, 54:14–55:5, 73:22–74:1.) Plaintiff did not offer any evidence to corroborate his claim that he worked as a dishwasher and pizza preparer at the restaurant. The three letters intended to prove that Plaintiff was one of Defendant's employees were inconsistent with Plaintiff's testimony and undermined his credibility. Although Plaintiff claims that he obtained the job through his cousin, Martinez, Plaintiff testified that it did not occur to him to contact Martinez, who no longer works for Defendant, to testify on his behalf. (Tr. 11:17–20, 46:13–21.) Plaintiff did not contact any of Defendant's other employees, former or present, that he claims to have worked with during the relevant period. (Tr. 47:5–49:9.) Accordingly, the Court finds that Plaintiff's testimony regarding his employment as a dishwasher and pizza preparer is not credible and is not supported by the documentary evidence.

   c. **Plaintiff's Work for Defendant**

Plaintiff worked for Defendant on an infrequent basis, when Defendant had private parties at the restaurant and needed additional staff. (Tr. 81:13–17, 107:9–17, 125:21–25.) Defendant's witnesses — Antoinette Modica, Defendant's owner; Anthony Modica, Antoinette Modica's husband who worked at the restaurant; and Pablo Llerena, Defendant's manager — credibly testified that the restaurant only employed around four to six regular employees. (Tr. 93:12–17, 110:21–25, 126:1–6.) When the restaurant had private parties, Defendant would hire additional workers. (Tr. 110:21–25, 133:20–25.) The record is not clear with respect to how many times Plaintiff worked at the private parties, but it appears that he worked at least three or four parties. (Tr. 82:6–8, 107:9–11.) The parties would last a few hours. (Tr. 127:3–4.) After the party was over, Plaintiff was paid in cash from the money provided by the customer. (Tr.

130:25–131:4.) There is no evidence in the record to suggest that Plaintiff was not properly compensated for the work he performed at these parties.

## II. Conclusions of Law

Plaintiff alleges that Defendant violated the FLSA and NYLL by failing to pay him minimum, overtime or spread-of-hour wages. An employer is required under the FLSA and NYLL to pay an employee a legally mandated minimum wage. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 65 (2d Cir. 2003); *see* 29 U.S.C. § 206(a)(1); N.Y. Labor Law § 652(1). Both the FLSA and NYLL require "that employers compensate employees who work over forty hours per week with overtime pay at the rate of one and one-half times the regular rate." *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010); *see also Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008). In addition, New York's "spread of hours" provision requires that an employer pay an employee an extra hour at the minimum wage rate, if the employee works more than ten hours in a day. *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 241 (2d Cir. 2011).

An employee who sues for unpaid wages has the burden of proving that the employer did not properly compensate him for the work he performed. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)); *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009). Where an employer has failed to keep accurate records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687). The employee's burden is not "high," and "it is possible for a plaintiff to meet this burden through estimates

6

based on his own recollection." *Id.* Still, "the plaintiff must produce '*sufficient* evidence to show the amount and extent of that work as a matter of *just and reasonable inference*.'" *Daniels v. 1710 Realty LLC*, No. 10 Civ. 22, 2011 WL 3648245, at *4 (E.D.N.Y. Aug. 17, 2011) (emphasis in original) (quoting *Anderson*, 328 U.S. at 687), *aff'd*, 497 F. App'x 137 (2d Cir. 2012).

The parties do not dispute that Defendant failed to keep any records related to Plaintiff's work at the restaurant. (Tr. 12:25–13:10, 107:22–24.) However, the Court finds that Plaintiff has failed to meet his minimal burden of demonstrating that he performed work for which he was not properly compensated. *See Kuebel*, 643 F.3d at 362; *Daniels v. 1710 Realty LLC*, No. 11 Civ. 2674, 2012 WL 4354494, at *2 (2d Cir. Sept. 25, 2012) ("While [the plaintiff] is correct that a plaintiff's burden under *Anderson* is minimal, there must be at least some credible evidence that he performed overtime work."). As previously discussed, the Court finds that Plaintiff's testimony that he worked as a dishwasher and pizza preparer for Defendant was not credible. Plaintiff's testimony was inconsistent with the documents that he provided in support of his claims, which included information that Plaintiff conceded was incorrect. (Tr. 11:10–13, 12:17–24.) Plaintiff relied on the September 2006 letter, which incorrectly states that he had been working for Defendant for two years, as the basis for his testimony that he was paid $275 a week. (Tr. 17:20–18:6.) Moreover, the evidence in the record suggests that these letters were either prepared by or at the direction of Plaintiff in order to be given to the hospital treating his wife.[3] The third letter is dated in Spanish, January 2, 2011, two months after Plaintiff claims that

---

[3] Plaintiff argues that it is "outlandish" to suggest that he manufactured these letters for the purpose of this litigation, since Plaintiff has not been to the restaurant since 2010. (Pl. Post-Trial Br. 9.) The record is not clear as to when these letters were created, but, based on Plaintiff's Exhibit 3, which is dated January 2, 2011 and does not have a "Prima Pasta & Café" stamp, it is likely that Plaintiff created these letters contemporaneously. The letters do not

7

he was fired. (Pl. Ex. 3.) Plaintiff speaks Spanish and testified that he cannot write in English. (Tr. 19:9–10.) The letter is handwritten, incomplete, unsigned and does not include Defendant's stamp. (Pl. Ex. 3.) Plaintiff testified that this letter was given to him by Llerena in August of 2010, but Llerena incorrectly dated the letter January 2, 2011. (Tr. 67:19–68:12.) Plaintiff made no attempt to explain why the letter is incomplete or why it includes inaccurate information. This testimony is simply not credible and it, along with the letters themselves, undermines the credibility of Plaintiff's testimony regarding the work he performed for Defendant. *See Mapssy Int'l, Inc. v. Marc Gardner, Cinq, Ltd.*, No. 09 Civ. 8185, 2013 WL 395109, at *2–4 (S.D.N.Y. Feb. 1, 2013) (finding a witness's testimony was not credible where it was "irreconcilable with the documentary evidence despite being given the opportunity, in some instances more than one opportunity, to explain the contradictions").

Instead, the Court credits the testimony of Defendant's three witnesses that Plaintiff was hired on an infrequent basis to assist in the parties at Defendant's restaurant. (Tr. 81:21–82:1, 107:9–17, 125:21–25.) All three witnesses testified that Defendant maintained only a handful of regular employees and would hire additional workers for parties. (Tr. 93:12–17, 110:21–25, 123:15–17, 133:20–25.) Defendant contacted Plaintiff to work parties through Plaintiff's cousin, who was a regular worker at the restaurant. (Tr. 126:9–16.) Plaintiff was paid in cash at the end of the party with the money provided by the customer. (Tr. 130:25–131:4.) Plaintiff's sporadic work for Defendant is consistent with the evidence in this case. As a result of Plaintiff's work at

---

appear to have been created for this litigation because the substance of the letters is inconsistent with what Plaintiff alleges in the Complaint and testified to at trial. Rather, the evidence suggests that the letters were created by Plaintiff or at his direction in order to provide proof of employment to the hospital where his wife was being treated, even though he did not have steady employment with Defendant. Plaintiff's admission that his wife got someone to notarize the September 2006 letter after it was signed also suggests that the letters were created by Plaintiff or at his direction.

Defendant's private parties, Plaintiff had access to the stamp and knowledge of the individuals who were employed at the restaurant in order to create the employment letters. Having failed to establish that Plaintiff was anything but an infrequent worker at Defendant's private parties, Plaintiff has failed to satisfy his burden of demonstrating that he performed work for which he was not properly compensated. *See Daniels*, 2011 WL 3648245, at *8 ("Because Daniels has not produced sufficient, credible evidence of the amount and extent of his work as a matter of just and reasonable inference, he has not met his burden under the FLSA to demonstrate that he performed any work for which he was not properly compensated."). Accordingly, the Court finds for Defendant on all claims.

### III. Conclusion

For the foregoing reasons, the Court finds that Plaintiff failed to establish that he performed any work for which he was not properly compensated and finds for Defendant on all claims. The Complaint is dismissed in its entirety, and the Clerk of Court is directed to close this case.

SO ORDERED:

_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated: April 4, 2013
      Brooklyn, New York